**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**


| | |
|---|---|
| **PIONEER NATURAL RESOURCES, U.S.A., INC., ET AL.** | **CIVIL ACTION** |
| | **NUMBER 08-227-JVP-DLD** |
| **VERSUS** | |
| **ZURICH AMERICAN INSURANCE CO., ET AL** | |

### MAGISTRATE JUDGE'S REPORT

This matter is before the Court on a motion to remand and for costs (rec. doc. 5) filed by plaintiffs, Pioneer Natural Resources U.S.A., Inc. and Pioneer Natural Resources Company.  The motion is opposed by the Underwriter defendants (rec. doc. 21).[1]

### Background

Plaintiffs are the owners of the East Cameron 322 platform and associated wells and well heads (EC 322) located in the Gulf of Mexico, and the defendants are various companies and syndicates subscribing to a Package Insurance Policy CR-5591(the Package Policy)  which covered EC 322 for the policy period of 15 June  2005 -  2006 (rec. doc. 1-6, Exhibit C).  Plaintiffs allege in their original petition that they sustained damages

---

[1] Defendants include the following Certain Underwriters at Lloyd's London and Certain London Market and Domestic Insurance Companies: Syndicate 457;  Syndicate 33;  Syndicate 2020;  Syndicate 1225;  Syndicate 5000;  Syndicate 1036;  Syndicate 1209;  Syndicate 510;  Syndicate 2987;  Navigators Insurance Company; Aspen Insurance UK Limited; Houston Casualty Company; Commonwealth Insurance Company; Gard Marine & Energy Ltd.; Zurich American Insurance Company; Mutual Marine Office, Inc. on behalf of N.Y. Marine & General Ins. Co.; Arch Insurance Company; Liberty Mutual Insurance Company; American Offshore Insurance  Syndicate; XL Specialty Insurance Company (through XL Marine & Offshore Energy) (rec. doc. 1-3).

of $50 million, excluding loss of income, related to the destruction of EC 322 by Hurricane Rita on September 23, 2005.[2]

Plaintiffs originally brought suit in state court against defendants under the Package Policy on August 8, 2007, for payment of insurance proceeds, breach of contract, detrimental reliance, and breach of duty of good faith and fair dealing.[3]  On September 5, 2007, defendants filed a competing declaratory relief action in Texas asserting that Texas courts had exclusive jurisdiction over the matter based on a forum selection clause in the slip (rec. doc. 6, Exhibit B).[4]  On February 8, 2008, plaintiffs filed an amended petition for damages against defendants and specifically sought recovery under Section Three's excess coverage under the Package Policy (rec. doc. 1-9).  On April 18, 2008, the Underwriter defendants removed this matter pursuant to the Federal Arbitration Act, 9 U.S.C. §§1 and 2, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§201-205, and 28 U.S.C. §1441, et. seq.

Defendants explain in their removal petition that plaintiffs allege coverage under Section Three of the Package Policy in the amended petition, and Section Three's

---

[2] Plaintiffs allege in their memorandum in support of their motion to remand that they "incur and continue to incur damages projected to exceed $185 million related to the destruction of EC322 and the damage to the wells" (rec. doc. 1-8).

[3] Plaintiffs explain in their memorandum in support of motion to remand that in order "to avoid prescription or venue issues, on August 8, 2007, Pioneer filed four identical lawsuits in Louisiana state courts - Orleans Parish, Cameron Parish, Lafayette Parish, and East Baton Rouge Parish.  Pioneer subsequently dismissed all except the Baton Rouge action as Underwriters agreed that all matters be allowed to proceed in Baton Rouge with Underwriters' reservations of their rights to assert forum non conveniens in Baton Rouge based on th Texas choice of law and jurisdiction provision based on the "slip" (rec. doc. 15, p. 9).

[4] The "slip" is the pre-policy/contract document that is used to place insurance in the London market. The Policy is the binding document that gives expansion to the terms contained in the "slip" (rec. doc. 15). The "slip" provides that "[t]he proper and exclusive law of this insurance shall be Texas law.  Any dispute arising under or in connection with it shall be subject to the exclusive jurisdiction of the Texas courts." (rec. doc. 6, Exhibit B).  This provision did not make it into the negotiated terms of the Package Policy.

"following form" provision incorporates the mandatory arbitration provision of the underlying AEGIS policy.  The existence of a mandatory arbitration agreement which is not entirely between citizens of the United States supports removal under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention), 9 U.S.C. §201, et. seq.   Defendants  therefore seek to invoke the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331.  Plaintiffs filed a motion to remand this matter to state court and for costs on May 5, 2008.  Defendants have opposed the motion, and the matter is now before the Court for review.

The Insurance Policies

The Package Policy underwritten by defendant underwriters is divided into sections covering various types of coverage related to risks associated with an offshore platform. The Package Policy also covers different layers of coverage and is composed of both primary and excess layers.   Of particular interest to the instant motion are sections one and three of the Package Policy.  Section One provides for $5 million in coverage for physical damage to the platform, including a $5 million primary layer for Removal of Wreckage/Debris.  Excess coverage over Section One is composed of two layers.  The first layer of excess coverage is through Associated Electric & Gas Insurance Services Limited (AEGIS) in the amount of $35 million over the underlying $5 million of Section One of the Package Policy.  The Package Policy comes into play again above the AEGIS policy.  This second excess layer is under Section Three of the Package Policy and is in the amount of

$65 million over the underlying $40 million ($5 million of Section One of the Package Policy

and $35 million excess of $5 million under the AEGIS policy).[5]

The "INSURING AGREEMENT" of Section Three of the Package Policy provides

that Section Three will be governed by the terms and conditions of the underlying AEGIS

policy:

> Subject to the Limit and Excess specified in the Declarations and any
> paramount exclusions contained in the General Conditions, this Section
> Three shall follow the terms and conditions maintained by the Named Insured
> with Associated Electric & Gas Insurance Services Limited ("AEGIS") - policy
> #X0602A1A05 - the "Underlying Insurance", including any separate or extract
> policy issued by or caused to be issued by AEGIS from the foregoing.
>
> (rec. doc. 1-6, Notice of Removal, Exhibit "C").

There is no dispute that the AEGIS policy provides for mandatory arbitration, and, indeed,

Pioneer and AEGIS are now in arbitration (rec. doc. no. 15).  There are, however, many

disputes over whether the mandatory arbitration provision of the AEGIS policy applies to

Section Three of the Package Policy.

## Law and Discussion

### *Standard on Removal and Remand*

Remand is proper if at any time the court lacks subject matter jurisdiction. See 28

U.S.C. §1447(c).  The removing party bears the burden of showing both that federal

jurisdiction exists and, if challenged, that the removal was procedurally proper.  See, e.g.,

---

[5] There are other policies relevant to the claimed losses, but those policies are not relevant for purposes of the pending motion. Defendants, Mutual Marine Office, Navigators Management UK, Aspen Insurance, ACE European Group, and Lloyd's Syndicates 1036, 0457, 1221, 0033, 3000, 1225, 0609, 1183, and 1987 subscribe to Excess Liability Policy CR-7886, which was issued to Pioneer. Defendants, XL Specialty Insurance Company, ACE Insurance Company of Texas, Navigators Insurance Company, Houston Casualty Company, and Lloyd's Syndicate 1036 subscribe to Excess Liability Policy CR-5640, which was issued to Pioneer.

*Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  The removal statute, 28 U.S.C. §1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278 (5th Cir. 2007); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941).  However, "the general rule of construing removal statutes strictly against removal 'cannot apply to Convention Act cases because in these instances, Congress created special removal rights to channel cases into federal court.'" *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 377 (5th Cir. 2006 ) (quoting *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1100, 1213 (5th Cir. 1991).  Removal under the Convention is an exception to the general rules that a federal question ordinarily must appear on the face of a properly pleaded complaint, and an anticipated or actual federal defense generally does not qualify a case for removal.  *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999).  Under the Convention, the grounds for removal may appear in the petition, but may also be shown in the petition for removal. See 9 U.S.C. §205; *Beiser v. Weyler*, 284 F.3d 665, 671 (5th Cir. 2002).

### Substantive Law

The Federal Arbitration Act (FAA) governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts both in state and federal courts. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983).   Chapter 2 of the FAA, 9 U.S.C. §§201-208, which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention), controls arbitration disputes in the international context.   In

general, the FAA creates a strong presumption in favor of arbitration, especially in international commercial agreements. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638-40, 105 S.Ct. 3346, 3359-61, 87 L.Ed.2d 444 (1985).

Pursuant to Section 203 of the Convention, an action or proceeding falling under the Convention shall be deemed to arise under the laws and treatise of the United States; thus, the district courts of the United States are deemed to have original jurisdiction of such actions, regardless of the amount in controversy. See 9 U.S.C. §203. Section 205 of the Convention allows defendants to remove a state court action at any time prior to trial when the subject matter of the lawsuit "relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. §205.[6]

A matter "falls under the Convention" if it (1) involves an agreement in writing to arbitrate a dispute; (2) arises out of a commercial legal relationship; (3) provides for arbitration in the territory of a Convention signatory; and (4) involves a least one non-American citizen or concerns property located abroad, involves performance or enforcement abroad, or has a reasonable relationship  with a foreign state. See  9 U.S.C. §202; *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144-1145 (5th Cir. 1985).  The determination of whether the agreement "fall[s] under the Convention"

---

[6] Where the subject matter of an action or proceeding pending in a State court *relates to an arbitration agreement or award falling under the Convention*, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed. See 9 U.S.C. §205 (emphasis added).

-6-

will ordinarily prove quick and easy, without requiring too much merits-like investigation by the district court. *Beiser v. Weyler*, 284 F.3d 665, 672, FN7 (5th Cir. 2002) .

In analyzing whether removal jurisdiction existed in *Beiser v. Weyler*, even though the arbitration agreement was between a defendant and a non-signatory, the Fifth Circuit focused on meaning of the phrase "relates to" in 9 U.S.C. §205. *Beiser*, 284 F.3d at 666, FN2. The Fifth Circuit broadly interpreted the term "relates to" and explained that "whenever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement "relates to" to the plaintiff's suit." *Beiser*, 284 F.3d, at 669.  The *Beiser* court also explained that because Section 205 allows district courts to assess their jurisdiction from the pleadings alone, courts must be cautious not to "conflate the jurisdictional and merits inquiries into a single step." *Beiser*, 284 F.3d, 670.[7]  The definition of "relates to" adopted by the *Beiser* court allows a determination of jurisdiction from the petition for removal itself, and keeps the jurisdictional and merits inquiries separate. Id., at 671. Thus, "absent the rare frivolous petition for removal, as long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim." Id.

The *Beiser* court stressed the importance of a parties' right to appeal a decision on a motion to stay or compel arbitration and explained that delving too deeply into the merits on a jurisdictional inquiry and then remanding the case for lack of subject matter jurisdiction would deprive defendants of an opportunity to appeal issues regarding whether the matter

---

[7]    Whether a federal court has jurisdiction to decide an issue is a different question from how to decide that issue correctly. *Beiser*, 284 F.3d, at 670; see also *Ostrowiecki v. Aggressor Fleet, Ltd.*, 2007 WL 4365442 (E.D. 2007).

should be stayed or compelled to arbitration.  *Id.* see also *Dahiya v. Talmidge International, Ltd.*, 371 F.3d 207 (5th Cir. 2004); *Sedco, Inc.,* 767 F.2d at 1149; *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1211-12 (5th Cir. 1991).  Conscious of these issues, the Court is cautious not to delve into the merits and focuses on whether the allegations made in the amended petition or notice of removal are sufficient to establish jurisdiction.

### Arguments of the Parties

The plaintiffs and defendants have advanced numerous arguments in support of their respective positions; however, both parties have lost sight of the pertinent issue in a motion to remand – which is simply whether the Court has subject matter jurisdiction based on the face of the pleadings and removal documents.  Issues of whether the terms of the underlying AEGIS policy will be incorporated into the Package Policy, whether the parties will be compelled to arbitration based on contract interpretation, or whether a party has waived its right to arbitrate are based on the merits, are inapplicable to the decision on the motion to remand, and are more appropriate for presentation in a subsequent motion.

Plaintiffs, for example, argue that this court does not have removal jurisdiction because the Convention does not apply.  Plaintiffs argue that they did not agree that the terms of the underlying AEGIS policy would be incorporated into the Package Policy and require arbitration of their Section Three claims. Plaintiffs further argue that the Convention does not apply because the arbitration provision does not provide for arbitration in the territory of a Convention signatory.  Both sides have submitted deposition testimony in support of their competing claims.  Plaintiffs also contend  that defendants have waived their right to arbitrate by filing the declaratory judgment action in Texas state court and

have waived their right to remove by conducting discovery and vigorously defending the

Baton Rouge state court action.  Finally, plaintiffs suggest that if the Court finds that the

Section Three claims are subject to arbitration, it should remand the Section Two claims

because they are not related to the arbitration agreement.

Defendants respond that removal was proper because the arbitration agreement

"falls under" the Convention and could conceivably affect the disposition of the case.

Defendants state that plaintiffs consented to the  agreement to arbitrate the dispute by

drafting the terms of the Package Policy, which incorporates the arbitration provision in the

underlying AEGIS policy.  Defendants continue that the agreement to arbitrate arises out

of a commercial legal relationship, arbitration can be compelled in this district, and the

arbitration agreement is between citizens or subjects of one or more foreign nations.

Defendants deny that they explicitly waived their right to remove.  Finally, defendants

believe that plaintiffs' claims under Section Two of the Policy should remain with their

Section Three claims because they "relate to" the arbitration provision covering plaintiffs'

Section Three claims, and their inclusion would prevent double recovery of damages.

### Analysis

In order for the Court to have subject matter jurisdiction, plaintiffs' claims must

"relate to" an agreement "falling under the Convention." 9 U.S.C. §205.   As the *Beiser*

court explained, in order to make that determination, the court must determine first whether

the arbitration provision "falls under the Convention."  If the agreement falls under the

Convention, then the second step is to determine whether the arbitration clause "relates

to" the cause of action.

<u>Does the arbitration agreement "fall under" the Convention?</u>

An arbitration provision "falls under" the Convention if it: (1) involves an agreement in writing to arbitrate a dispute; (2) arises out of a commercial legal relationship; (3) provides for arbitration in the territory of a Convention signatory; and (4) involves at least one non-American citizen or concerns property located abroad, involves performance or enforcement abroad, or has a reasonable relationship with a foreign state.9 U.S.C. §202.

Defendants' notice of removal alleges that there is an agreement to arbitrate the dispute in this matter.  Specifically, the notice of removal states that plaintiffs allege in their amended petition that defendants breached Section Three of the Package Policy, which through the "INSURING AGREEMENT" language or "following form" provision, invokes the AEGIS policy's mandatory arbitration provision (rec. doc. 1-2).[8] There is no doubt the underlying AEGIS policy contains a mandatory arbitration agreement, as plaintiffs have already invoked the provision to resolve their claim for first tier excess removal of debris (rec. docs. 15 and 21, p. 9).  Although plaintiffs spend much time advancing arguments based on contract interpretation and intent of the parties that the underlying AEGIS arbitration provision cannot be incorporated into the Package Policy to cover their Section Three claims, this is not the issue before the Court on the motion to remand.  The questions of whether the arbitration provision in the AEGIS policy can be read into the

---

[8] Section Three, Article I of the Package Policy provides that "this Section Three shall follow the terms and conditions maintained by the Named Insured with Associated Electric & Gas Insurance Services Limited ("AEGIS") - policy #X0602A1A05..." (rec. doc. 102, p. 3).  Pursuant to Section IV, Condition R, of the AEGIS policy, any controversy or dispute arising out of or relating to the Policy, or the alleged breach, termination or validity thereof, shall be resolved by the procedures specified in Conditions R, consisting of (1) good faith negotiations between executions with authority, toward resolution of any controversy or dispute arising out of the Policy, including exchange of position papers and meetings; (2) mediation with a neutral third party ; and (3) if the controversy or dispute cannot be resolve via negation or mediation, it shall be subject to binding arbitration pursuant to, among other things, the U.S. Arbitration Act, 9 U.S.C. §1, et. seq.

Package Policy through the following form provision or whether a particular party can be compelled to arbitrate a particular issue are merits-based inquiries, separate from the Court's determination of whether it has jurisdiction to decide the case either way. *Ostrowiecki*, 2007 WL 4365442, FN36; *Beiser,* 284 F.3d 670-671.  There clearly is an arbitration agreement which arises out of a commercial relationship.  And there clearly is a reasonable allegation that this arbitration agreement applies to Section Three of the Package Policy through the following form provision.  Whether or not the plaintiffs ultimately will be bound by that agreement is a dispute for another day, but the first two requirements for jurisdictional purposes are met.

The third requirement is that the agreement provides for arbitration in the territory of a Convention signatory.   The parties agree that the arbitration clause in the underlying AEGIS policy does not provide for a specific venue for arbitration.  Rather, the provision states that "[t]he arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. §1, et seq. ..." (rec. doc. 1-7, Exhibit D, p.19).  If  the Court were to find at a later date that the parties were bound by the agreement and that the Section Three claims were subject to mandatory arbitration pursuant to the terms of the underlying AEGIS policy, it would not be helpless to enforce the arbitration agreement. See *Jain v. de Méré*, 51 F.3d 686 (7th Cir. 1995). The Court has the power to compel arbitration in its own district by proceeding under 9 U.S.C. §4, which provides in pertinent part that "... [t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. ..."  Id. at. 690, *citing* 9 U.S.C. §4.  Thus the third requirement is met.

The fourth requirement is that the agreement involves a least one non-American citizen or concerns property located abroad, involves performance or enforcement abroad,

or has a reasonable relationship with a foreign state.  Defendants allege that several of the defendant Underwriters are citizens or subjects of one or more foreign nations; therefore, the Package Policy does not arise out of a relationship which is "entirely between citizens of the United States," and the Package Policy has a reasonable relation with one or more foreign states (rec. doc. 1-2). Plaintiffs are Delaware corporations, which are domiciled in and have their principal places of business in Texas (rec. doc. 1-8).  Subscribers to the Package Policy include (1) nine Lloyd's syndicates[9]; (2) several London Market Insurance companies[10]; (3) Gard Marine & Energy Ltd., a Norwegian insurance company; and (4) Commonwealth Insurance Company, a Canadian Insurance Company (rec. doc. 21, Exhibits 3-4).

Based on the allegations in defendants' notice of removal, defendants have alleged facts sufficient to support a finding of that the alleged arbitration agreement "falls under the Convention."

Does the litigation "relate to" the arbitration clause?

Having found that the arbitration provision "falls under" the Convention, the Court must now determine whether the litigation "relates to" the arbitration clause for purposes of removal.  Plaintiffs' claims for coverage under Section Three of the policy must be interpreted in connection with Section Three's following form provision that arguably incorporates the mandatory arbitration provision in the AEGIS policy. Under the extremely loose requirements of "relates to" under 9 U.S.C. §205, as laid out by the Fifth Circuit in

---

[9] Syndicate numbers 457, 33, 2020, 1225, 5000, 1036, 1209, 510, and 1987 (rec. doc. 21, Exhibit 3). Syndicate 457 is a citizen of the United Kingdom. Id, Exhibit 4. The United Kingdom, Norway and Canada are all parties to the Convention. See notes to 9 U.S.C. §201.

[10] Navigators Insurance Company, Aspen Insurance UK Ltd., and Houston Casualty Company.

*Beiser*, the Court finds that the claims under Section Three relate to the arbitration agreement.  Based on a subsequent motion by the parties, the Court will be able to make the determination whether claims under Section Three of the Policy should be compelled to arbitration.[11]

Plaintiffs also argue that their claims under Section Two do not "relate to" the arbitration agreement because Section Two involves a permissive, as opposed to mandatory arbitration agreement.  Regardless of the merit to that argument, for the time being, the court may exercise supplemental jurisdiction over the Section Two claims.  Whether or not these claims will be stayed or compelled to arbitration or ultimately remanded can be decided on another day, once the forum for the Section Three claims has been resolved.

Waiver of Removal

Plaintiffs argue that even if there is an arbitration agreement under Section Three, defendants waived their right to remove by seeking "substantive relief in state courts in Baton Rouge and Texas" and engaging in discovery in those proceedings (rec. doc. 15).  Plaintiffs' extensive reliance on *Certain Underwriters at Lloyd's v. Bristol-Myers Squibb Co.,* 51 F.Supp.2d 756 (E.D. Tex. 1999), is misplaced.  The court in *Certain Underwriters at Lloyd's v. Bristol-Myers Squibb Co.*, supra, granted the motion to remand based on a finding that the insurers had waived their opportunity to remove under the Convention.  This

---

[11] Defendants suggest that the *Beiser* analysis is not necessary for plaintiffs' Section Three claims because the Section Three claims are subject to mandatory arbitration.  Defendants' argument presupposes the underlying AEGIS policy is incorporated into the Package Policy via the following form provision and mandates arbitration of plaintiffs' Section Three claims.  The Court declines to conduct a merits-based inquiry to make the determination as to whether the agreement to arbitrate will be incorporated on this motion, as it is more appropriate for a subsequent motion to compel arbitration.

finding came after the insurers had realigned themselves as plaintiffs, filed a claim for recision of the insurance contract based on misrepresentation, and there had been a full trial on the merits on the recision claim.   The Fifth Circuit in *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1209-1210 (5th Cir. 1991), held that defendants may contractually waive the removal privilege under Section 205; however, the waiver must be explicit.

Section 205 allows for removal of a state court action "at any time before the trial thereof."   Plaintiffs have outlined the time line of legal filings and discovery related to this action; however, it appears that there has not been a trial on the merits in either the Baton Rouge or Texas actions, and the plaintiffs only recently amended their petition to specifically add Section Three claims.  Additionally, much of the legal maneuvering by the parties has been over the jurisdictional/forum issues.   Thus, there is no evidence at this time that defendants have explicitly waived their right to removal under Section 205.[12]

### Conclusion and Recommendation

The agreement to arbitrate was raised in the notice of removal, and if applicable, it conceivably could affect the outcome of the litigation. The Fifth Circuit has clearly instructed the district courts not to delve into the merits of whether the arbitration agreement will be invoked based on a construction of the terms of the insurance contracts, testimony of witnesses, and other information gleaned through discovery during the jurisdictional inquiry. It is the existence of an arbitration agreement which could conceivably affect the outcome

---

[12] Matters of procedural arbitrability, such as, *inter alia,* whether the request for arbitration was timely under the arbitration agreement, are for the arbitrator to decide. *See Sedco,* 767 F.2d 1140, 1151, citing, *Commerce Park at DFW Freeport v. Mardian Constr. Co.,* 729 F.2d at 339, n.5 (5th Cir. 1984).

of litigation, not the enforceability of the agreement, which  is at issue in this motion. Defendants may not ultimately prevail on a subsequent motion to compel arbitration, and they may one day be returned  to state court, but that is an issue for another day.  For the purposes of this motion to remand, defendants have made the requisite showing to establish that removal under 9 U.S.C. §205 was proper.

The Magistrate Judge finds that the litigation relates to an arbitration agreement that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201-208, and therefore the matter was properly removed pursuant to 9 U.S.C. § 205.  For the reasons stated above, the Magistrate Judge recommends that the plaintiffs' motion to remand and for costs (rec. doc. 5), should be **DENIED**.

Signed in Baton Rouge, Louisiana, on January 6, 2009.

    MAGISTRATE JUDGE DOCIA L. DALBY

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

PIONEER NATURAL RESOURCES, USA, INC., ET AL.

VERSUS

ZURICH AMERICAN INSURANCE CO., ET AL

CIVIL ACTION

NUMBER 08-227-JVP-DLD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 6, 2009.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**