UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PIONEER NATURAL RESOURCES
U.S.A., INC., AND PIONEER NATURAL
RESOURCES COMPANY

VERSUS

ZURICH AMERICAN INS. CO., ET AL

CIVIL ACTION

NO. 08-227-JVP-DLD

## RULING

This matter is before the court on a motion by defendants, Certain Underwriters at Lloyd's London, and Certain London Market and Domestic Insurance Companies ("Underwriters") to compel arbitration of all of plaintiffs' claims, or, in the alternative, to compel arbitration of a portion of the claims and stay others pending resolution of the claims submitted to arbitration (doc. 74). This matter is also before the court on a joint motion by plaintiffs, Pioneer Natural Resources, U.S.A., Inc. and Pioneer Natural Resources Company (jointly "Pioneer"), to remand a portion of the claims (doc. 81). The motions are opposed. Jurisdiction is alleged under 9 U.S.C. § 203 and 28 U.S.C. § 1331. Oral argument was heard on the motions and the matter is now submitted.

### FACTS AND PROCEDURAL HISTORY

At all times pertinent to this action, plaintiffs were owners and operators of offshore platforms, pipelines and other facilities in the Gulf of Mexico, including

East Cameron 322 Platform ("EC322") and its associated wells. On September 23, 2005, Hurricane Rita passed over EC322 and caused the platform to collapse. This action arises out of disputes related to the subsequent insurance claims filed by Pioneer.

Pioneer asserts insurance claims under Energy Package Policy No. CR—5591 and EJLPN0205 ("Package Policy"), certain coverage sections of which the Underwriters severally subscribed. The Package Policy, effective June 15, 2005 through June 15, 2006, provides several types of coverage.

Section One of the Package Policy provides insurance coverage for physical damage to the platform, including $5 million coverage for Removal of Wreckage and Debris ("R.O.D"). Section Two provides coverage for Control of Well Insurance, Redrilling/Extra Expense, and Seepage and Pollution, Cleanup and Contamination. Section Three of the Package Policy, Excess Liabilities, provides $35 million excess coverage for R.O.D. in a policy issued to Pioneer by Associated Electric & Gas Insurance Services Limited ("AEGIS"). The Third Section also provides a second layer of excess coverage in the amount of $65 million. Section Six provides coverage for loss of production income.

Plaintiffs brought suit against the Underwriters under the Package Policy in the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana on August 8, 2007. Pioneer claimed damages of $50 million, excluding loss of income related to the destruction of oil platform and alleged breach of contract, detrimental reliance and breach of duty of good faith and fair

dealing, as well as a right to payment of insurance proceeds. Defendants, on September 5, 2007 filed a declaratory action in Texas asserting that Texas had exclusive jurisdiction over the matter. On February 8, 2008, plaintiffs filed an amended petition seeking recovery under the excess coverage provided by Section Three of the Package Policy (doc. 1-9). Then, on April 18, 2008, defendants removed this matter pursuant to the Federal Arbitration Act, 9 U.S.C. §§1 and 2, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. §§201-205, and 28 U.S.C. §1441, et. seq.

In support of removal, defendants assert that a "following form" provision in Section Three of the Package Policy incorporates a mandatory arbitration provision in the underlying AEGIS policy. Because parties to the agreement are not citizens of the United States, defendants argue that the existence of a mandatory arbitration provision renders the agreement subject to interpretation under the Convention and therefore provides federal question jurisdiction pursuant to 28 U.S.C. §1331.

There is no dispute that the AEGIS policy provides for mandatory arbitration, and Pioneer and AEGIS have engaged in arbitration of the disputes arising under that policy. Pioneer however, disputes the Underwriters' assertion that the rest of the Package Policy is subject to mandatory arbitration.

On May 5, 2008, Pioneer moved for remand asserting that the following form provision of Section Three does not incorporate the mandatory arbitration

3

provision of the AEGIS policy into the Package Policy and that the Convention is therefore not applicable to the dispute. In denying the May 5, 2008 motion to remand, the court stated:

> Although plaintiffs spend much time advancing arguments based on contract interpretation and intent of the parties that the underlying AEGIS arbitration provision cannot be incorporated into the Package Policy to cover their Section Three claims, this is not the issue before the Court on the motion to remand. The questions of whether the arbitration provision of the AEGIS policy can be read into the Package Policy through the following form provision or whether a particular party can be compelled to arbitrate a particular issue are merits-based inquiries, separate from the court's determination of whether it has jurisdiction to decide the case either way.

(Doc. 56, pp 10-11).

The court then found that "defendants have alleged facts sufficient to support a finding that the alleged arbitration agreement "falls under the Convention," but the court also noted that "[w]hether or not these claims will be stayed or compelled to arbitration or ultimately remanded can be decided on another day, once the forum for the Section Three claims has been resolved." (Doc. 56, pp. 11, 12).

Shortly thereafter, the court dismissed a motion to stay pending arbitration specifically stating that the dismissal was without prejudice to defendants to file a motion to compel arbitration and/or stay litigation in order to squarely present the pertinent issues, along with any evidentiary materials necessary for the motion" (doc. 62). Accordingly, defendants filed the current Motion to Compel Arbitration

4

and/or Motion to Stay Litigation (doc. 74), and plaintiffs filed the current motion to Remand Section Two Claims (doc. 81).

## LAW AND DISCUSSION

The Underwriters assert that the "following form" provision in Section Three of the Package Policy unambiguously incorporates the mandatory arbitration provision of the AEGIS policy. They further argue that, based upon that incorporation of a mandatory arbitration clause into the policy, it is subject to a federal analysis under the criteria set forth in *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140 (5th Cir. 1985).

Pioneer argues that upon application of the appropriate state law to the contract, the following form provision in Section Three does not incorporate the mandatory arbitration provision of the AEGIS policy into the Package Policy and, therefore, fails to meet the threshold requirement for the application of the *Sedco* analysis. The Underwriters, however, argue that state law should play no part in the court's resolution of the motion before it (doc. 83, p. 5). Specifically, the Underwriters argue that the court need not apply state law to determine a threshold question of whether there is an agreement to arbitrate the dispute, because the first inquiry of the *Sedco* analysis asks whether there is an agreement in writing to arbitrate the dispute.[1] *Id.*

---

[1] The four questions that compose the "limited inquiry" set forth in *Sedco* are as follows:
    (1) is there an agreement in writing to arbitrate the dispute; in other words, is the arbitration agreement broad or narrow;
    (2) does the agreement provide for arbitration in the territory of a Convention signatory;

The court disagrees with the Underwriters' interpretation of the principles established in *Sedco*. In *Sedco*, there was no dispute that the parties had agreed in writing that they would submit to arbitration "any dispute or difference between the parties." After noting that fact, the court stated that "[t]he Convention contemplates a very limited inquiry by courts when considering a motion to compel." *Sedco*, 767 F.2d at 1144. The *Sedco* court then listed the four questions that a court must answer when considering a motion to compel arbitration under the Convention.

The first inquiry in the *Sedco* analysis requires the court to ask, "is there an agreement in writing to arbitrate the dispute; in other words, is the arbitration broad or narrow; . . . ?" *Id.* A footnote further elaborated on the first inquiry of the *Sedco* analysis as follows:

> As the court in *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir 1983) said: [s]imply stated, a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the clause, if the clause is "broad." In contrast, if the clause is "narrow," arbitration should not be compelled unless the court determines that the dispute falls within the clause. Specific words or phrases alone may not be determinative although words of limitations would indicate a narrower clause. The tone of the clause as a whole must be considered.

*Sedco*, 767 F.2d at 1144-45, n. 10.

---

(3) does the agreement to arbitrate arise out of a commercial legal relationship;
(4) is a party to the agreement not an American citizen?

*Sedco*, 767 F.2d at 1144-45.

6

Clearly, the first inquiry of the *Sedco* analysis addresses the scope of an arbitration agreement rather than its existence. It presumes that a valid, written agreement to arbitrate exists and asks whether that written agreement to arbitrate covers the specific dispute before the court. If the written arbitration agreement is arguably broad enough to cover the dispute at issue, the court should refer the matter to arbitration to determine whether arbitration is the proper forum for resolution of the underlying dispute.

The distinction between the existence of a written agreement to arbitrate and the scope of such an agreement is significant because different standards apply. If the parties have clearly agreed to a broad mandatory arbitration clause that arguably covers the substantive dispute between them, then they can hardly object to arbitration as a means of determining whether the underlying dispute is properly a subject of arbitration. That approach is consistent with the goal of the Convention "to encourage recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." See e.g., *Acosta v. Master Maintenance and Const. Inc.*, 452 F.3d 373, 376 (5th Cir. 2006); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). That approach also reflects an "unambiguous policy in favor of recognition of arbitration agreements falling under the Convention." *Acosta*, 452 F.3d at 376-77 (noting that provisions of the

Federal Arbitration Act "independently and explicitly empower[] courts to compel arbitration in accordance with the arbitration agreements involved").[2]

However, "[f]ederal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound." *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (5th Cir. 2008); see also *Graves v. BP America, Inc.*, 568 F.3d 221 (5th Cir. 2009) (stating that the issue of a valid agreement to arbitrate is controlled by "ordinary state-law principles that govern the formation of contracts," whereas the scope of the arbitration clause is determined "by applying the federal substantive law of arbitrability"). Thus, "in deciding whether there is a valid agreement between the parties, the Fifth Circuit applies state law." *Id.* at 1371 (citing *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1072 (5th Cir. 2002).

The Package Policy contains forty-two "General Insuring Conditions," which are "APPLICABLE TO ALL SECTIONS OF THIS POLICY" (doc. 1-5, pp. 23-35 (emphasis in original)). Clause Thirty-Six of the General Insuring Conditions is captioned "Disputes," and paragraph A of that clause addresses arbitration as follows:

> In the event it is mutually agreed by the Assured and Underwriters to arbitrate any dispute arising under this Policy,

---

[2] *See*, 9 U.S.C. § 206: A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement.

8

> the matter shall be submitted for arbitration in accordance with the following . . . .

(Policy, General Insuring Conditions, Cl. 36 ¶ A (doc. 1-5, p. 33)).

The plain language of the arbitration provision demonstrates that mutual agreement is a prerequisite for dispute resolution through arbitration. Thus, the policy specifically provides for permissive arbitration rather than mandatory arbitration. Moreover, Clause Thirty-Six also provides that:

> If any dispute is not resolved through arbitration in accordance with paragraph A. of this Clause 36, it is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

(*Id.* at ¶ B (p. 34)).

Clause 40 of the General Insuring Conditions further provides that the "policy shall be subject to the applicable US state or US federal law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (USA) CL 355." *Id.* at Cl. 40 (p. 35).

Thus, the parties agreed not only that mutual agreement is a condition that must be met before a dispute can be submitted to arbitration, but also specifically provided for suit in a court of competent jurisdiction in the event that they do not mutually agree to arbitrate the dispute. The Underwriters, however, argue that the following form provision of Section Three of the policy renders that section subject to mandatory arbitration. The following form provision provides:

9

>Subject to the Limit and Excess specified in the Declarations and any paramount exclusions contained in the General Conditions, this Section Three shall follow the terms and conditions maintained by the Named Insured with Associated Electric & Gas Insurance Services Limited ("AEGIS") – policy # X0602A1A05 – the "Underlying Insurance", including any separate or extract policy issued by or caused to be issued by AEGIS from the foregoing.

(Policy, § 3, CL 1 (doc. 1-6, p. 23)).

The underlying AEGIS policy provides in pertinent part:

>Any controversy or dispute arising out of or relating to this POLICY, or the breach, termination or validity thereof, which has not been resolved by non-binding means as provided herein within ninety (90) days of the initiation of such procedure, shall be settled by binding arbitration in accordance with the CPR Institute Rules for Non-Administered Arbitration of Business Disputes (the "CPR Rules") by three (2) independent and impartial arbitrators.
>
>\* \* \*
>
>The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1, et seq., and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof.

(AEGIS Policy, § IV(R), ¶ 3 (doc. 1-7, p. 19).

The mandatory arbitration provision of the AEGIS Policy, incorporated into the agreement by the following form provision in Section Three, clearly conflicts with provisions of the General Insuring Conditions which provide for arbitration only upon mutual consent and also provide for suit in the absence of such mutual consent to arbitration. Therefore, the threshold question before the court is whether, under "ordinary state-law principles that govern the formation of

contracts," the policy demonstrates that the parties made a valid agreement to arbitrate. In answering that question, the court need not determine whether Louisiana or Texas law controls, because the result is the same under either.

Under Louisiana law, "[a]n insurance policy is a contract between parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Reynolds v. Select Props., Ltd.*, 634 So.2d 1180, 1183 (La.1994). "Contract interpretation is a determination of the common intent of the parties." *Casares v. James M. Brown, Builder, Inc.*, __ So.3d __, 2009 (La.App. 2 Cir. 2009) (quoting, La.Civ.Code art. 2045). Moreover, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.*, (quoting La.Civ. Code art. 2050). "That any ambiguity in an insurance policy is to be strictly construed against the insurer and in favor of the insured is a maxim so well known in the law as to require no need to resort to authority in support thereof." *Pizzetta v. Lake Catherine Marina, LLC*, 995 So.2d 26, 28 (La.App. 4 Cir. 2008).

Under Texas law, "[i]t is a fundamental rule of law that insurance policies are contracts and as such are controlled by rules of construction which are applicable to contracts generally." *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.2003). Moreover:

> Whether a contract, like an insurance policy, is ambiguous is a question decided by examining the entire contract in light of the circumstances present when the parties

11

entered the contract. A policy is unambiguous, as a matter of law, if the court can give it a definite legal meaning. On the other hand, if a policy is subject to more than one reasonable interpretation, we must adopt the construction most favorable to the insured when we resolve the uncertainty.

*State Farm Fire and Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex.1998) (internal citations omitted).

The incorporation of a mandatory arbitration clause into the Third Section of an insurance agreement that also contains permissive arbitration and right to sue clauses that are "APPLICABLE TO ALL SECTIONS OF THIS POLICY," creates ambiguity. It could be argued that incorporation of the mandatory arbitration clause creates an exception in Section Three to the permissive arbitration that is otherwise applicable to the rest of the policy. Construing the contract in that manner, however, requires the court to ignore the fact that the policy contains specific language in bold, capital letters providing that permissive arbitration is "APPLICABLE TO ALL SECTIONS OF THIS POLICY." It could also be argued that the parties specifically bargained for, and agreed, that all sections of the Package Policy would be subject to the permissive arbitration provision in the General Insuring Conditions, thus creating an exception to the following form provision insofar as it might otherwise be construed as providing for mandatory arbitration of disputes arising under Section Three.

As noted above, whether the court applies Texas or Louisiana law, ambiguity in an insurance policy must be construed in favor of the insured.

12

Accordingly, the court concludes that no valid agreement exists between the parties to submit the disputes to arbitration.

This action was removed on an allegation of federal question jurisdiction based upon the applicability of the Convention to this dispute. Though the notice of removal alleged facts sufficient to defeat the May 5, 2008 motion to remand, the court specifically noted in its ruling on that motion that the ruling was not based on an evaluation of the merits or contract interpretation.[3]

The Underwriters' motion to compel arbitration, however, requires the court in this ruling to engage in contract interpretation. In doing so, the court has determined that the Package Policy does not present a valid agreement to arbitrate. Because the Convention only applies to valid commercial arbitration agreements in international contracts the court also concludes that the Convention is not applicable to the dispute before the court and federal question jurisdiction is, therefore, absent.

Federal courts are courts of limited jurisdiction, and "[a]bsent jurisdiction conferred by statute, district courts lack the power to consider claims." *Veldhoen v. United States Coast guard*, 35 F.3d 222, 225 (5th Cir. 1994). Moreover, pursuant to 28 U.S.C. §1447(c), "[i]f at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

---

[3] *See supra*, Facts and Procedural History (*citing* doc. 56, pp. 10-12).

13

## CONCLUSION

Accordingly, this matter shall be **REMANDED** to the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

Baton Rouge, Louisiana, October 7, 2009.

                                                                              *John V. Parker*
                                                                              JOHN V. PARKER
                                                                              UNITED STATES DISTRICT JUDGE
                                                                              MIDDLE DISTRICT OF LOUISIANA